## ALEXANDER & LANCASHIRE *v.* QUIGLEY'S EXECUTORS.

**Petition Taken for Confessed — Process — Submission.**

An order taking the petition for confessed should not be made before the submission of the case, or before the term at which it stood for trial, and should not be made before the process was served on all defendants concerned in interest with those against whom confession is taken.

**Answer.**

The error in submitting the case before process was executed or confession taken should not, and does not, prevent the filing of a meritorious and sufficient answer at any time before the case stood for trial.

**Judgment Against an Administrator Not Conclusive Against a Stranger.**

A judgment against an administrator cannot be conclusive evidence against a stranger of anything except its own existence. It is not even *prima facie* evidence against the alienee of the intestate, though the deed under which he holds be void as to the party seeking relief against it.

**Parties and Privies.**

A judgment against one person cannot be enforced against another who is neither party nor privy to it, and who is not represented either as to his person or property by a party to the action.

**Creditor Against Fraudulent Grantee of Debtor.**

It is the claim of the creditor and the liability of the debtor and not the judgment against the administrator that may be enforced against the fraudulent grantee of the intestate.

**Evidence.**

A judgment against an administrator is but evidence of the facts which constitute a claim against the testator.

**Pleadings — Parties.**

The pleadings should state the facts themselves, and a mere statement of that which at most is but *prima facie* evidence of facts not expressed in that evidence, nor to be with reasonable certainty implied from it, does not apprise the defendant of the real cause of action, and is insufficient.

**Fraudulent Conveyance.**

The petition to enforce a judgment against a fraudulent grantee in a void deed should state the facts which constitute the cause of action against the grantor in said deed.

Proof.
>    The plaintiff should be required to prove the facts constituting the original cause of action against the grantor.

Judgment Against Administrator — Evidence.
>    A judgment against an administrator cannot be regarded as sufficient evidence against the grantee of the intestate that he was justly indebted to the plaintiff in the sum adjudged to him.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

June 11, 1866.

OPINION OF THE COURT BY JUDGE MARSHALL:

This petition in equity was filed by the executors of J. B. Quigley against J. B. Alexander, trustee, and his *cestui que trust*, Mrs. Mary Lancashire, holding certain land and effects conveyed to them by William Lancashire in his lifetime, and against J. D. and M. C. Hendricks and G. C. Cook alleged to be indebted to said Alexander for one of the tracts of land conveyed to him in trust, and which he had sold as trustee.

The petition states in substance that William Lancashire had sold to J. B. Quigley, a negro woman, Emily, with warranty that said Quigley had brought a suit at law against said Lancashire on said warranty, and that both of these parties having afterward departed this life the plaintiffs in October, 1863, obtained a judgment against G. M. Ratcliff, administrator of said Lancashire, for $829, and that an execution had issued thereon and was returned *nulla bona,* a copy of which, they say, will be filed as a part hereof marked "A."

A copy of the execution with the return stated was accordingly filed. But neither the record of the action at law nor even the judgment is exhibited or referred to as part of the petition, nor was a copy of either filed as a part of the plaintiff's case.

It may be assumed that the judgment against the administrator was rendered in the action which J. B. Quigley had brought against William Lancashire, and on the same warranty, but if this be assumed, there is no statement of the nature or terms of the warranty, nor of any breach thereof, nor of any fact or facts which might have constituted a breach. But after the loose and general statement of the judgment as above shown, the petition goes on to aver that at the time of the sale and warranty of the negro, Wil-

liam Lancashire owned considerable property, real and personal; and describing several tracts of land as having been thus owned, it charges that after said sale and warranty, William Lancashire conveyed said tracts to J. B. Alexander in trust for the grantor's wife, without valuable consideration, and for the purpose of preventing the collection of any judgment which might be obtained on account of his fraud in the sale of said negro to J. B. Quigley.

The plaintiff's charge that the conveyance was in fraud of these rights, and of their claim which they say was in existence at its date and unsatisfied, and alleging that their only means of obtaining satisfaction thereof is by subjecting the property included in or derived from said conveyance, they pray that it may be set aside. Stating the sale of one of the tracts of land by the trustee, Alexander, they pray that the debtor therefor be enjoined from making payment until the further order of the court. They also ask that the trustee and *cestui que trust* may account for the property, real and personal, and its proceeds held under the conveyance from Lancashire, and that they be enjoined from disposing thereof until the further order of the court.

Process on this petition was served on J. B. Alexander and Mrs. Lancashire on the 4th of July, 1864. At the first succeeding term, in October, 1864, these defendants failing to appear or answer and the process not having been served on all of the other defendants, and the administrator not being even a party, a formal order was made taking for confessed the allegations of the petition against said J. B. Alexander and Mary Lancashire. At the next term, ————, 1865, these defendants moved the court to set aside the order of confession and permit them to file an answer, which was presented for the purpose. Their motion having been overruled, they excepted, and their bill of exceptions contains their rejected answer, and a copy of the record of the action at law referred to as part of the answer. At the same term, ————, 1865, the process having been fully executed and the defendant Cook answering that he owed Alexander, as alleged, a sum larger than that claimed by the plaintiffs, and would pay as the court might direct, it was ordered and adjudged that he pay to the plaintiffs the amount of their judgment with interest from its date, and the costs of both actions, in discharge of so much of his debt to Alexander as trustee, etc.

From that judgment Alexander and Mrs. Lancashire have appealed.

The order taking the petition for confessed, if a distinct order of that kind be allowable before the submission of the case for trial or before the term at which it is to be tried, ought not to be made before the process is served on all of the defendants concerned in interest with those against whom the confession is taken, and at any rate the order being as an order distinct from the submission and judgment, merely interlocutory, should not and does not prevent the filing of a meritorious and sufficient answer at any time before the submission of the case for decision — and especially when the delay has not been extraordinary, and is so accounted for as to show that it is not to be attributed to willful negligence, or to a disposition to frustrate or needlessly to postpone the attainment of justice.

The appellants state in their proffered answer, that owing to the disturbed state of that section of the country at the time, and the general alarm which made many or most persons find themselves fearful of leaving their homes, there was irregularity and uncertainty in the holding of the courts, and it was the understanding and by them honestly believed that there would be no court in the county in October, 1864.   If excuse were necessary we think that although this statement may not conclusively show that the appellants could not at some hazard and by the utmost diligence have ascertained that there was a session of the court in October, it is sufficient, and at any rate, when connected with other facts shown by their answer.

By their answer and its exhibit they show that they had endeavored without success to open the judgment at law, which had been rendered against a nominal administrator (the sheriff) of whose appointment they were ignorant, in an action of the pendency of which after its abatement by the death of both parties, they had no knowledge, and in which the administrator understanding that there were no assets, which was true, had not made the slightest effort to prevent a recovery by adducing or even inquiring from the family of the intestate or others evidence which might prevent or reduce the recovery.

By affidavits exhibited in their effort to open the judgment and to be allowed to defend the action, they show that they could produce evidence tending strongly to disprove the alleged unsoundness of the negro, Emily, for which judgment was recovered.

In the rejected answer they deny positively that the unsoundness alleged in the action at law or any other unsoundness incon-

sistent with the warranty in the bill of sale existed, and they aver that they can sustain by evidence the answer of their grantor, William Lancashire, in the action at law, which was lodged in the office before his death and afterward filed in court, and which makes a clear and ample defense, and should have stimulated the administrator to make some effort to sustain it, if he desired to perform his duty.

By rejecting the answer and rendering the judgment appealed from, conclusive effect has been given to the judgment against the administrator rendered under the circumstances stated as proving against the appellants who were neither parties nor privies to it, nor in any manner represented in the action, facts which they have persistently denied and sought an opportunity of disproving, and by the assumption of which they are deprived (without that opportunity) of property which they hold by title indefeasible unless on the ground of fraud or statutory denunciation, and which is good against all the world except creditors and purchasers who may have been injured by the grant to them.

We are clearly of opinion that the court erred in refusing to set aside the order of confession, and to permit the appellants to file the answer which was presented by them, and that for this error, if there be no other, the judgment should be reversed. We are not satisfied, however, that the judgment should be sustained even if there had been no appearance or offer of defense. The petition does not as already shown state any of the facts which constitute the breach of warranty for which the judgment against the administrator is said to have been rendered, and does not state the terms nor even the nature of the warranty. It is only from the record of the action at law exhibited as part of the rejected answer, and from the denials and averments of that answer itself, that we discover that the warranty was of the soundness of the woman Emily except, etc., and the action and the judgment were for an alleged breach of that warranty.

Then upon the face of the petition, the question arises whether the mere statement of the judgment against the administrator made in the petition is sufficient to show any valid demand against the appellants or their property.

The petition seems to have been framed upon the assumption that the judgment against the administrator of Lancashire on his warranty is conclusive as to the existence and extent of his liability

on the warranty, and conclusively establishes, even against his alienees, the appellants, and the property in their hands, the claim of the plaintiffs in that judgment to the sum adjudged against the administrator.

The appellants do not deny that the warranty was made before the deed to Alexander (which is proved by the dates of the deed and bill of sale), and as the Revised Statutes (1 Stanton's Rev. Stat. p.    ) makes the voluntary deed void as to existing liabilities of the grantor without reference to any actual intent to defraud, the liability of Lancashire for a breach of this warranty having existed at the date of the deed, the deed is, therefore, void as to such liability, whatever may have been the intent with which it was made, and the denials in the answer unaccompanied by any averment of valuable consideration are immaterial.

If, therefore, the judgment be conclusive evidence of the demand of the plaintiffs in this case, the rejection of the answer if it could be deemed erroneous would not have been prejudicial to the appellants.    But as to the appellants the judgment against the administrator was *resenter alios acta,* and on general principles of justice cannot be conclusive evidence against strangers of anything except its own existence, unless it be that in connection with the execution and the return thereon, it may be conclusive proof of diligence in attempting to collect the demand from the administrator.    Indeed, we do not perceive the principle on which such a judgment should be regarded even as *prima facie* evidence of any other facts, as against the alienees of the intestate, though the deed under which they hold be void as to the party seeking relief against it.

But even if the judgment against the administrator be *prima facie* evidence against the alienee that the intestate grantor of the void deed was liable to the plaintiff to the extent ascertained by the judgment, and of the facts on which it was founded, still as in that case the grantee of the void deed would have a right to controvert those facts, it would follow that under the principles of pleading established for the attainment of justice, and essential to that object, the facts on which the judgment is founded and which constitute the basis of the claim itself should, unless shown in the judgment, be stated in the pleading by which the plaintiff in the judgment seeks to enforce his claim against the holder of the property under the void deed, who is a stranger to the judgment.

A judgment against one person cannot be enforced against another who is neither party nor privy to it, and who is not represented either as to his person or his property by any party to the action.    It is the claim of the creditor and the liability of the debtor, and not the judgment against the administrator that may be enforced against the fraudulent grantee of the debtor.    And if the judgment be *prima facie* evidence of a rightful claim, it is but evidence of the fact or facts which constitute the claim.    The pleading should state the facts themselves, and a mere statement of that which at most is but *prima facie* evidence of facts not expressed in that evidence, nor to be with reasonable certainty implied from it, does not apprise the defendant of the real cause of action, and is insufficient.

In the cases of Norris' Executors, etc. *v.* Ramsey, etc., 2 Bibb, 549; Ewing's Hrs. *v.* Handley, 4 Lill. 355; Richards Admr. *v.* Porter's Hrs., 6 B. Mon. 1; Hare's Hrs. *v.* Bryant's Admr., 7 J. J. Marsh. 376, and Litsey *v.* Smith's Admr., 10 B. Mon. 75, 76, the question as to the effect which should be given in a contest with heirs, to a judgment for money against the executor or administrator, has been more or less distinctly considered or stated.    In none of them has it been regarded as more than *prima facie* evidence, though in some of them the heir claimed as donee or grantee of his ancestor.

In the case of Bedell's Admr. *v.* Kerthley, 5 B. Mon. 598, the court held that after an ineffectual attempt to coerce his debt by judgment against the administrator alone, the creditor could not resort to the heirs.    This doctrine was modified or departed from in the case of Buford *v.* Pauling's Executors, 5 Dana, and in the case of Litsey *v.* Smith's Admr., *supra,* the court place the action against the heirs after an ineffectual judgment against the administrator (as authorized by the Act of 1819, 1 Stat. Law, 780), on the same footing precisely as if it had been brought in the first instance against the administrator and heirs, or against the heirs alone when such action was proper.    In the case of Rells *v.* Graham, 4 B. Mon. ——, recognized in Warren *v.* Hall, 6 Dana, and in other cases, a distinct remedy is indicated, by which the creditor of a deceased debtor is to reach the debtor's property in the hands of a person to whom· he had fraudulently transferred it. That remedy seems to require the establishment of the debt by original evidence against the party holding the property and to be

independent of any proceeding against the personal representative of the debtor, unless so far as may be necessary to show that there has been an ineffectual effort made in good faith to coerce the debt from him.

An amendment of the petition in this case, stating the facts which constituted the breach of warranty on which the claim of the plaintiffs is founded, would make this proceeding consistent with the form of remedy indicated in Ralls v. Graham, and which seems to us to be appropriate to the nature of the case. And as even without that amendment the proceeding may be made to conform substantially to that indicated in the case of Ralls v. Graham, by requiring the plaintiffs to prove the facts constituting the breach of warranty and the consequent damage, by original evidence admissible against the appellants; if the plaintiffs do not amend as above suggested and the defendants file their rejected answer, the facts denied by the answer should be regarded as untrue unless proved to be true without the aid of the judgment and the demand of the plaintiffs on the warranty of Emily should be considered as not being established against them unless it be so proved.

The voidness of a deed fraudulent as to creditors of the grantor cannot be made available to a creditor unless nor until he establishes the justice and extent of his demand. This is conclusively done by a judgment against the debtor himself. And as his fraudulent conveyance is void as to his creditors, the property conveyed is still his so far as the creditor and his debt are concerned and may be subjected to the judgment as his property even by execution against him. In such case he represents the property which as to that debt and judgment is his, and he might, perhaps, be regarded as representing in some sort his fraudulent grantee, there being some privity between them. The grantee though he may contest the fraud in the conveyance and may impeach the judgment itself as having been obtained by fraud and collusion is otherwise bound by it. But the deed though void as to creditors, being valid as to the representatives, real and personal, of the grantor, the property whether real or personal never was and never could be theirs in that character. There is no privity between them and the grantee of the decedent and they neither represent the property granted nor the person who has received it under the fraudulent deed. On what principle then of justice or reason can a judgment against an administrator be regarded as sufficient evidence against the grantee

of the intestate that the intestate was justly indebted to the plaintiff in the sum adjudged to him? Whatever answer this question might receive as a general one applicable to ordinary cases, we are of opinion that the judgment and execution as alleged in the petition in this case, should have had no other effect than that of proving that such judgment was rendered and that the execution upon it was returned "no property."

Wherefore, the judgment is reversed, and the cause remanded, with directions to set aside the order taking the petition for confessed against the appellants and to permit them to file their answer heretofore offered. And also to permit the plaintiffs to amend their petition by making the administrator, Ratcliff, a defendant, and setting forth a cause of action for the alleged breach of warranty, and for further proceedings in conformity with this opinion.